Stephen A. Chiari (SBN 221410)
schiari@srclaw.com
Adrianna A. Rubino (SBN 300951)
arubino@srclaw.com
**SACKS, RICKETTS & CASE LLP**
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

*Attorneys for Petitioners*
Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) Inc., and Deborah Davies

FILED
OCT 12 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES

Petitioners,

vs.

MCKESSON CORPORATION

Respondent.

Case No. CV 18 80 181 MISC

TSH

CASE IN OTHER COURT:
*Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case No. 16-cv-00013 (KBJ) (RMM) (D.D.C.)

**AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY FROM MCKESSON CORPORATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: ______________
Time: ______________
Judge: ______________
Courtroom: ______________

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]**

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO COMPEL ..... 1

STATEMENT OF ISSUE TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. Introduction ..... 1

II. Jurisdictional Statement ..... 2

BACKGROUND TO THIS MOTION ..... 2

III. The Underlying Actions ..... 2

IV. Discovery Has Established Zimmerman and Howard's Close Connections to a PES Network ..... 3

V. The Instant Motion to Compel ..... 6

ARGUMENT ..... 8

VI. This Court Should Order McKesson to Produce the Requested Records ..... 8

A. Records of Purchases by [redacted], Their Affiliated Entities, and the Player Plaintiffs are Highly Relevant to the Underlying Actions ..... 8

B. The Requested Production Is Proportional ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28 (D.D.C. 2011) ........ 9

*Frazier v. Bed Bath & Beyond, Inc.*, No. 11-mc-80270 RS (NC), 2011 WL 5854601 (N.D. Cal. Nov. 21, 2011) ........ 10

*In re Coan*, No. C 06-80350, 2007 WL 128010 (N.D. Cal. Jan. 12, 2007) ........ 10

*Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2011 WL 2470493 (N.D. Cal. Jun. 21, 2011) ........ 9

*Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994) ........ 9

*Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) ........ 9

*Perry v. Schwarzenegger*, 268 F.R.D. 344 (N.D. Cal. 2010) ........ 8

**Rules**

FED. R. CIV. P. 26(b)(1) ........ 8

FED. R. CIV. P. 45 ........ 1, 8

Local Civil Rule 37 ........ 1

## NOTICE OF MOTION AND MOTION TO COMPEL

TO RESPONDENT MCKESSON CORPORATION AND ITS ATTORNEYS:

PLEASE TAKE NOTICE that on _______________, at _____________, or as soon thereafter as counsel may be heard in Courtroom _____ of the above-entitled Court, located at the San Francisco Federal Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies (collectively, the "Al Jazeera Petitioners") will, and hereby do, move to compel production of documents and materials sought in the Al Jazeera Petitioners' August 31, 2018 subpoena.

This Motion is made pursuant to Federal Rule of Civil Procedure 45 and Local Civil Rule 37 and is supported by this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Stephen A. Chiari filed herewith, and such other materials and any argument and evidence that may be allowed by the Court.

## STATEMENT OF ISSUE TO BE DECIDED

1. Whether Respondent McKesson Corporation should be ordered to produce the records subpoenaed by Petitioners Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies (collectively, the "Al Jazeera Petitioners") respectfully submit this memorandum of law in support of their motion to compel non-party McKesson Corporation ("McKesson") to produce records within ten (10) days of this Court's order. The requested records relate to certain purchases of medical equipment or pharmaceuticals. This evidence is relevant to the Al Jazeera Petitioners' defense in defamation cases brought against them by Ryan Howard and Ryan Zimmerman (the "Player Plaintiffs") who were mentioned in *The Dark Side: Secrets of the Sports Dopers*" (the "Documentary"), a documentary about the use of performance

enhancing substances ("PES") by professional athletes.[1] To date, McKesson has failed to produce any documents relating to the use of PES in response to the Al Jazeera Petitioner's August 31, 2018 subpoena (the "Subpoena"), which are essential to the Al Jazeera Petitioners' ability to defend against the Player Plaintiffs' allegations. Although they will continue to work cooperatively with McKesson on compliance with the Subpoena, the Al Jazeera Petitioners were compelled to file this motion in advance of the fact discovery deadline in the Underlying Actions (October 12, 2018).

## II. JURISDICTIONAL STATEMENT

This Court has jurisdiction over the instant Motion pursuant to Federal Rule of Civil Procedure 45 because the Subpoena at issue seeks documents from non-party McKesson located at One Post Street, San Francisco, California 94104.

## BACKGROUND TO THIS MOTION

## III. THE UNDERLYING ACTIONS

The Underlying Actions were commenced after the December 27, 2015 broadcast of the documentary "*The Dark Side: Secrets of the Sports Dopers*" (the "Documentary"), which the Al Jazeera Petitioners produced. The Documentary investigated how doctors, trainers, agents and pharmacists take extreme measures and use deception to secretly supply PES to professional athletes. PES are often illegal and always banned by professional sports organizations, because they confer an unfair advantage to athletes who use them to pad their statistics and prolong their careers, at the expense of others who play by the rules.

The Al Jazeera Petitioners realized that PES suppliers and users would not speak openly with the media. Therefore, the Documentary followed Liam Collins, an aging British track star who infiltrated a network of PES peddlers by professing to be desperate to qualify for the 2016 Olympics. Weaving his way through several contacts, Collins was told how suppliers and

[1] *See Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 & 16-cv-00014 (KBJ) (RMM) (D.D.C.) (the "Underlying Actions"). Through minute orders entered under both of the referenced case numbers on November 18, 2016, Zimmerman's action was consolidated with Howard's action.

athletes avoid detection with pseudonyms, phony diagnoses, and falsified or destroyed records. Eventually, Collins was introduced to a pharmacist named Charles Sly, whom PES network members described as "a genius at outwitting WADA [The World Anti-Doping Agency]."[2]

Using hidden cameras, Collins recorded twenty-seven hours of conversations with Sly. Over that time, Sly provided an extended tutorial about how he secretly supplied PES to prominent professional athletes and taught them how to avoid detection during drug tests. In one of many noteworthy scenes caught on film, a former catcher for the Chicago Cubs admitted to taking illegal drugs supplied by Sly.[3] The footage also showed Sly telling Collins about six other professional athletes who used PES—including Zimmerman, a current first baseman for the Washington Nationals, and Howard, a former first baseman for the Philadelphia Phillies.[4]

On January 5, 2016, Zimmerman and Howard filed the Underlying Actions seeking millions of dollars in defamation damages from the Al Jazeera Petitioners.[5]

## IV. DISCOVERY HAS ESTABLISHED ZIMMERMAN AND HOWARD'S CLOSE CONNECTIONS TO A PES NETWORK

Despite the Player Plaintiffs' public proclamations of innocence, discovery has revealed [redacted] [6] [redacted]

---

[2] *See* Declaration of Stephen A. Chiari dated October 11, 2018 ("Chiari Decl."), Ex. A, Documentary Tr. 13.

[3] *See id.* at 22-23.

[4] *See id.* at 26-27.

[5] *See* Zimmerman Orig. Compl. ¶ 61, Case No. 16-cv-00013; Howard Orig. Compl. ¶ 64, Case No. 16-cv-00014.

[6] *See* Chiari Decl., Ex. B, at ZIMMERMAN-0005695. Sly and Riley went into business together after being introduced by a former football player. *See* Chiari Decl., Ex. C, Riley Dep. Tr. 31:24-32:1, 50:3-19. [redacted] *See* Chiari Decl., Ex. B, at ZIMMERMAN-0005693.



[redacted][7] For his part, [redacted]

[redacted][8]

[redacted] is a former MLB player who was twice suspended for using banned PES and who attributed at least one of those suspensions to [redacted].[9] Undaunted, [redacted], eight-time Mr. Olympia and admitted steroid user Ronnie Coleman.[10]

[redacted]:

[redacted][11]

---

[7] *See* Chiari Decl., Ex. D, at ZIMMERMAN-0005369. [redacted] Given the very personal nature of this information, the Al Jazeera Petitioners did not include the attachment but can supplement the record should the Court deem this information relevant to the adjudication of the instant Motion. Notably, Zimmerman has improperly designated all of his connections to Sly and even Sly's identity as "medical treatment" entitled to highly confidential protection.

[8] *See* Chiari Decl., Ex. E, at HOWARD-0004982. As with Zimmerman, Howard has applied extensive, and inappropriate, "highly confidential" designations. The Al Jazeera Petitioners have already filed a motion to de-designate Howard's materials. *See* ECF No. 104, Case No. 16-cv-00013. Because that motion is pending, the instant papers were filed under seal out of an abundance of caution.

[9] *See* Chiari Decl., Ex. F, Byrd Dep. Tr. 81:5-82:3.

[10] *See Five Bodybuilders to Admit Taking Steroids*, (Apr. 30, 2015), https://www.discovery.uk.com/blog/the-five-most-famous-bodybuilders-to-admit-taking-steroids; *Drugs and the Evolution of Bodybuilding* (Aug. 8, 2014), https://www.theatlantic.com/health/archive/2014/08/drugs-and-the-evolution-of-bodybuilding/375100/.

[11] *See* Chiari Decl., Ex. E, at HOWARD-0004810.



[redacted][13]

Discovery has also exposed the Player Plaintiffs' relationships with [redacted], an "anti-aging"[14] specialist who was recruited by Sly and [redacted] to treat clients at their sports compound.[15] Together, [redacted] Sly, and [redacted] prepared materials for a business called Elementz Rx,[16] which was designed to expand upon Sly and [redacted] preexisting gateway business, Elementz Nutrition, to "get guys into pharmacy stuff."[17] Although [redacted] testified that he could not recall meeting Sly more than one time, the evidence shows that their familiarity was more than skin deep:[18]

---

[12] *See id.* at HOWARD-0004993 to HOWARD-0004994, HOWARD-0004996, HOWARD-0004892, HOWARD-0004897, HOWARD-0004914.

[13] *See* Chiari Decl., Ex. G, at HOWARD-0004158.

[14] *See generally Athletes in Doping Documentary Linked to Controversial Anti-Aging Industry*, WASH. POST (Mar. 11, 2016) [hereinafter *Rucker Washington Post Article*], *available at* https://www.washingtonpost.com/sports/when-pro-athletes-go-to-anti-aging-clinics-doping-experts-take-notice/2016/03/10/f90a01c2-e3ef-11e5-b0fd-073d5930a7b7_story.html?noredirect=on&utm_term=.2cbcbb1b6e11 (reporting on Rucker's anti-aging practice and a string of doping scandals that originated from similar clinics). This article quoted one doping expert as saying, "[W]e [should] be suspicious about elite athletes who visit anti-aging clinics . . . there is so much evidence that the people who run these clinics are willing to bend the rules and break the law." *Id.* (internal quotation marks omitted).

[15] *See* Chiari Decl., Ex. H, Rucker Dep. Tr. 10:4-21.

[16] *See* Chiari Decl., Ex. I, at RILEY0000030; RYWAAC-0000008.

[17] Chiari Decl., Ex. J; *see also* Chiari Decl., Ex. C, [redacted] Dep. Tr. 31:24-32:1, 50:3-19 (describing how [redacted] and Sly met and went into business together) & Ex. K, at KRUMS-0000852 at 55-56, 70-71 (business plan listing [redacted] and Sly on management team for Elementz Nutrition). [redacted]—at least until it was taken down around the time the Documentary aired.

[18] This public Twitter post—where Rucker celebrated "our very own Dr. Sly!"—was once linked to an Instagram video that showed Rucker getting a needle injection from Sly. *See* Chiari Decl., Ex. L. The underlying video has since been taken down from various social media platforms. *See Rucker Washington Post Article*, *supra* note 14.

RuckerIntegrative
@RuckerOzone
Follow
Dr. Rucker getting an ozone shoulder injection from our very own Dr. Sly! #ozone #ozoneinjection...
instagram.com/p/fYtuSTliZR/
4:44 PM - 12 Oct 2013

[redacted],[19] which were stocked with banned PES, including testosterone.[20] His former nurse testified that [redacted] would see special patients with no other staff present.[21] She further testified that [redacted] would not keep records when he provided testosterone, which was made freely available to trainers at the sports compound where [redacted][22] [redacted].[23]

## V. THE INSTANT MOTION TO COMPEL

On June 8, 2018, the Al Jazeera Petitioners deposed [redacted] and his role as a supplier of PES and related medical supplies. [redacted] [redacted], on August 31, 2018, the

---

[19] *See generally* Chiari Decl., Ex. H, Rucker Dep. Tr. 46:17-47:6, 102:2-18. [redacted] *Compare, e.g.*, *Rucker Washington Post Article*, *supra* note 19 (quoting anonymous source "familiar with Howard and Zimmerman's defamation lawsuits" who claimed that Rucker only "drew blood" from Plaintiffs), *with Ryan Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, No. 18-mc-00130 (KBJ) (RMM) (D.D.C.), ECF No. 13, at 6 (claiming that Rucker "provided Howard with an ozone injection in both of his knees").

[20] *See* Chiari Decl., Ex. H, [redacted] Dep. Tr. 28:13-18, 29:14-22, 33:16-23.

[21] *See, e.g.*, Chiari Decl., Ex. M, Adams Dep. Tr. 37:14- 22.

[22] *See id.*, Adams Dep. Tr. 38:10- 39:17.

[23] *See* Chiari Decl., Ex. H, [redacted] Dep. Tr. 66:4-8.

[24] *See* Chiari Decl., Ex. N, [redacted] Dep. Tr. 196:19-20.

Al Jazeera Petitioners served a subpoena *duces tecum* on McKesson (the "Subpoena").[25] The Subpoena sought, *inter alia*, six categories of information, including but not limited to documents and communications relating to either of the [redacted] [redacted][26]

On September 14, 2018, counsel for McKesson responded with boilerplate objections, and offered to meet and confer regarding the Subpoena.[27] Counsel for McKesson and counsel for the Al Jazeera Petitioners thereafter engaged in a productive and cooperative negotiation regarding the scope of the Subpoena. On September 19, 2018, after a meet and confer, the Al Jazeera Petitioners provided additional information requested by McKesson to facilitate compliance with the Subpoena.[28] The Al Jazeera Petitioners also—again as requested by McKesson—shortened the relevant time period for the Subpoena by close to three years.[29] And on September 26, 2018, again as requested by McKesson, the Al Jazeera Petitioners provided additional information to allow McKesson to more easily identify the requested records.[30]

Since September 26, 2018, however, the Al Jazeera Petitioners have received no substantive communications, much less a production of documents responsive to the Subpoena. Indeed, it took three emails last week before McKesson's counsel, on October 5, 2018, agreed to follow up with their client to determine the status of the request.[31] After the Al Jazeera Petitioners sent further follow-up emails on October 9, 2018 and October 10, 2018, McKesson's counsel finally responded on October 10, 2018 that it appeared documents from the relevant time frame had been purged, but no final confirmation had been obtained.[32] Given the October 12, 2018 fact discovery deadline in the Underlying Actions (with an exception for issues that are subject to motion practice), the Al Jazeera Petitioners had no choice but to move to compel the

---

[25] *See generally* Chiari Decl., Ex. O.
[26] *See id.*
[27] *See generally* Chiari Decl., Ex. P.
[28] Chiari Decl., ¶¶ 20-21 & Ex. Q
[29] *Id.*, ¶ 21 & Ex. Q.
[30] *Id.*, ¶ 22 & Ex. Q.
[31] *Id.*, ¶ 23 & Ex. Q.
[32] *Id.*, ¶ 24 & Ex. Q.

production of the documents requested under the Subpoena. The Al Jazeera Petitioners will continue to work cooperatively with McKesson in the hopes of obviating the need for a hearing on this Motion.

## ARGUMENT

### VI. THIS COURT SHOULD ORDER MCKESSON TO PRODUCE THE REQUESTED RECORDS

As discussed above, [REDACTED] .[33]

Requiring production of those records is proportional to the needs of those cases and will not be burdensome, particularly given the Al Jazeera Petitioners' extensive cooperation in narrowing the scope of the Subpoena and providing additional information to facilitate McKesson's search. Production should therefore be ordered by this Court.

#### A. Records of Purchases by [REDACTED] Their Affiliated Entities, and the Player Plaintiffs are Highly Relevant to the Underlying Actions

The Al Jazeera Petitioners are entitled to discovery of all non-privileged information that is relevant to any claim or defense and "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also* FED. R. CIV. P. 45 advisory committee note (observing "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party" governed by Rules 34 and 26); *Perry v. Schwarzenegger*, 268 F.R.D. 344, 349 (N.D. Cal. 2010) (affirming the broad discovery standard articulated under Rule 26 in motion relating to non-party discovery). Here, it is beyond cavil that the requested discovery is highly relevant, and so production should be compelled.

In the Underlying Actions, the Player Plaintiffs claim that Sly's statements in the Documentary about their PES usage were defamatory. The Player Plaintiffs cannot prevail on their defamation claims if the Al Jazeera Petitioners are able to demonstrate that the statements in question are true or substantially true. *See, e.g.*, *Moldea v. New York Times Co.*, 15 F.3d 1137,

[33] *See* Chiari Decl., Ex. N, Snider Dep. Tr. 196:19-20.

1150 (D.C. Cir. 1994) ("'Substantial truth' is, however, generally regarded as a defense to defamation."); *Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28, 35 (D.D.C. 2011) ("Truth is an absolute defense to [a] defamation claim[] . . . ."). Information about suppliers in the PES network with known connections with the Player Plaintiffs is therefore integral to the defense of the Underlying Actions. The Al Jazeera Petitioners "must be afforded an opportunity to probe the issue of truth during discovery." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 241 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).

As discussed above, non-party discovery confirms that [REDACTED] Further, [REDACTED], who—given the size and significance of McKesson in the U.S. market—may also have sourced from McKesson directly. Guided by this information, the Al Jazeera Petitioners limited the Subpoena to documents or communications relating only to purchases by the PES network (which included [REDACTED]) and the [REDACTED]. The clandestine nature of PES suppliers makes taking direct discovery of McKesson all the more important, as neither the suppliers nor the Player Plaintiffs have been, or are motivated to be, forthcoming regarding their supply or use of PES. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2011 WL 2470493, at *4 (N.D. Cal. Jun. 21, 2011) (denying motion for protective order and upholding third party subpoenas that sought documents not in the plaintiff's possession even though it was "likely that some of these documents exist within defendant's files"). The single best source of evidence regarding the substances or devices that have been supplied by McKesson to [REDACTED], would be McKesson's own records.

**B. The Requested Production Is Proportional**

The requested production is not only relevant, but it is also proportional to the needs of the Underlying Actions, and is not burdensome. All the Al Jazeera Petitioners ask is that McKesson conduct a reasonable search of its records for purchases made under the DEA-issued numbers assigned to [REDACTED] and their businesses, or [REDACTED]

[redacted]. The Al Jazeera Petitioners have, at McKesson's request, limited the time period of the request, and otherwise made efforts to reduce any possible burden on McKesson by providing information that will allow McKesson to conduct a more targeted search.

Moreover, McKesson has not identified any particularized burden that would arise from compliance with the Subpoena. In any event, this Court should reject any superficial arguments that compliance would be burdensome. *See, e.g.*, *In re Coan*, No. C 06-80350, 2007 WL 128010, at *5 (N.D. Cal. Jan. 12, 2007) (granting motion to compel compliance with subpoena where third parties "did not identify how each discovery request is overly broad, burdensome, or oppressive" or "state specific facts in support of the objection"); *see also Frazier v. Bed Bath & Beyond, Inc.*, No. 11-mc-80270 RS (NC), 2011 WL 5854601, at *1 (N.D. Cal. Nov. 21, 2011) (granting motion to compel where third party "ma[de] a boilerplate 'relevance' objection" to subpoena but failed to "specifically respond[] to Defendants' relevance argument").

Because this discovery would be relevant and proportional, and McKesson has made no showing of burden, this Court should grant the motion to compel.

## CONCLUSION

For the foregoing reasons, the Al Jazeera Petitioners respectfully request that McKesson be ordered to produce any responsive, non-privileged documents in their possession within ten (10) days of this Court's order.

Respectfully submitted.

Dated: October 11, 2018

SACKS, RICKETTS & CASE LLP

By: ______________________
STEPHEN A. CHIARI
ADRIANNA A. RUBINO
*Counsel for Petitioners*
Al Jazeera America, LLC,
Al Jazeera Media Network, Al Jazeera International (USA), Inc., and Deborah Davies

Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611137423
Cashier ID: sprinka
Transaction Date: 10/12/2018
Payer Name: JOSHUA DAVID BLANK

---

MISCELLANEOUS PAPERS
For: AL JAZEERA AMERICA LLC
Case/Party: D-CAN-3-18-MC-080181-001
Amount: $47.00

---

CREDIT CARD
Amt Tendered: $47.00

---

Total Due: $47.00
Total Tendered: $47.00
Change Amt: $0.00

3:18MC80181TSH

Checks and drafts are accepted subject to collections and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn.