Stephen A. Chiari (SBN 221410)
schiari@srclaw.com
Adrianna A. Rubino (SBN 300951)
arubino@srclaw.com
**SACKS, RICKETTS & CASE LLP**
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

*Attorneys for Petitioners*
Al Jazeera America, LLC, Al Jazeera Media
Network, Al Jazeera International (USA) Inc.,
and Deborah Davies

FILED

OCT 12 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES<br><br>Petitioners,<br><br>vs.<br><br>MCKESSON CORPORATION<br><br>Respondent. | CV 18 80 181 MISC TSH<br>Case No. _____<br><br>CASE IN OTHER COURT:<br>*Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case No. 16-cv-00013 (KBJ) (RMM) (D.D.C.)<br><br>**DECLARATION OF STEPHEN A. CHIARI IN SUPPORT OF PETITIONERS AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br><u>Documents Filed/Lodged Herewith:</u><br>1. Petitioners' Administrative Motion to File Under Seal<br>2. [Proposed] Order |

DECLARATION OF STEPHEN A. CHIARI IN SUPPORT OF PETITIONERS' MOTION
TO FILE UNDER SEAL

1  I, STEPHEN A. CHIARI, declare:

2  1.  I am an attorney licensed to practice in California, and am a partner at Sacks,

3  Rickets & Case LLP, counsel for Al Jazeera America, LLC, Al Jazeera Media Network, Al

4  Jazeera International (USA) LLC, and Deborah Davies (collectively, the "Al Jazeera

5  Petitioners"). The Al Jazeera Petitioners are Defendants in two consolidated actions pending in

6  the U.S. District Court for D.C., styled as *Ryan W. Zimmerman, et al. v. Al Jazeera America,*

7  *LLC, et al.*, Case Nos. 16-cv-00013 and 16-cv-00014 (KBJ) (RMM) (the "Underlying Actions").

8  I am fully familiar with the facts set forth herein.

9  2.  I submit this Declaration in support of the Al Jazeera Petitioners' Administrative

10  Motion to File Under Seal ("Seal Motion"). I executed a Declaration in support of the Al Jazeera

11  Petitioners' Motion to Compel Discovery from McKesson Corporation ("Chiari Declaration ISO

12  Motion to Compel").

13  3.  Attached as **Exhibit 1** is a true and correct copy of the Revised Protective Order

14  (available at Dkt. 101) that was entered in the Underlying Actions on April 26, 2018. The

15  Revised Protective Order in the Underlying Actions provides that information may be designated

16  as "Highly Confidential."

17  4.  Attached as **Exhibit 2** is a true and correct copy of the Al Jazeera Petitioners

18  Motion to Compel Discovery from McKesson Corporation ("Motion to Compel"), which is

19  redacted to the extent it contains references to the "Highly Confidential" exhibits below. The

20  redactions in the Motion to Compel are at p. i:15, p. 3:16-21; portions of fn. 6 at p. 3:27-28; p.

21  4:1-9, 11-14; portions of fn. 7 at p. 4:18-19; p. 5:1-9; portions of fn. 17 at p. 5:23-25; p. 6:7-14,

22  16-19; portions of fn. 19 at p. 6:21-22; portions of fn. 20 at p. 6:25; portions of fn. 23 at p. 6:27;

23  portions of fn. 24 at p. 6:28; p. 7:3-4; p. 8:7-8, 13; p. 9:8-11, 14, 21-22, 27; p. 10:1.

24  5.  Attached as Exhibit B to the Chiari Declaration ISO Motion to Compel is a true

25  and correct copy of an email chain that was produced in the Underlying Actions as

26  ZIMMERMAN-0005693 to ZIMMERMAN-0005697. This document was designated as

27  "Highly Confidential" under the Revised Protective Order by Plaintiff Ryan Zimmerman

28

DECLARATION OF STEPHEN A. CHIARI IN SUPPORT OF PETITIONERS' MOTION
TO FILE UNDER SEAL

1 ("Zimmerman") in the Underlying Actions.

2       6.     Attached as Exhibit D to the Chiari Declaration ISO Motion to Compel is a true

3 and correct copy of an email, without its attachment, that was produced in the Underlying

4 Actions as ZIMMERMAN-0005369 to ZIMMERMAN-0005377. This document was

5 designated as "Highly Confidential" under the Revised Protective Order by Zimmerman.

6       7.     Attached as Exhibit E to the Chiari Declaration ISO Motion to Compel is a true

7 and correct compilation of text messages that were produced in the Underlying Actions as

8 HOWARD-0004982, HOWARD-0004810, HOWARD-0004993 to HOWARD-0004998,

9 HOWARD-0004891 to HOWARD-0004892, HOWARD-0004897, and HOWARD-0004914.

10 This document was designated as "Highly Confidential" under the Revised Protective Order by

11 Plaintiff Ryan Howard ("Howard") in the Underlying Actions.

12       8.     Attached as Exhibit G to the Chiari Declaration ISO Motion to Compel is a true

13 and correct copy of an invoice that was produced in the Underlying Actions as HOWARD-

14 0004158. This document was designated as "Highly Confidential" under the Revised Protective

15 Order by Howard.

16       9.     Attached as Exhibit H to the Chiari Declaration ISO Motion to Compel are true

17 and correct excerpts from Dr. George Rucker's deposition dated July 9, 2018 from the

18 Underlying Actions. The following portions of the deposition were designated as "Highly

19 Confidential" under the Revised Protective Order by Howard and Zimmerman: p. 46:17-47:22,

20 102:14-15, 102:18-103:10. The following portions of the deposition were designated as "Highly

21 Confidential" under the Revised Protective Order by Dr. George Rucker: 46:17-48:5, 66:3-

22 67:25, 102:14-103:10.

23       10.     Attached as Exhibit N to the Chiari Declaration ISO Motion to Compel are true

24 and correct excerpts from Shawn Snider's deposition dated June 8, 2018 from the Underlying

25 Actions. The following portions of the deposition were designated as "Highly Confidential"

26 under the Revised Protective Order by Howard and Zimmerman: p. 194:3-195:2.

27       I declare under penalty of perjury under the laws of the United States that the foregoing is

28

2

true and correct to the best of my knowledge, information, and belief.  This declaration was

executed on October 11, 2018 at San Francisco, California.

STEPHEN A. CHIARI

DECLARATION OF STEPHEN A. CHIARI IN SUPPORT OF PETITIONERS' MOTION
TO FILE UNDER SEAL

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN W. ZIMMERMAN and RYAN JAMES HOWARD, <br><br> Plaintiffs, <br><br> v. <br><br> AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., and DEBORAH DAVIES, <br><br> Defendants. | No. 16-cv-00013 (KBJ) |

## REVISED PROTECTIVE ORDER

Plaintiffs Ryan W. Zimmerman and Ryan J. Howard (collectively, "Plaintiffs") and

Defendants Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International

(USA) LLC, and Deborah Davies (collectively, "Defendants") (together with Plaintiffs, the

"Parties"), by and through their respective counsel of record in the above-captioned consolidated

matter, hereby seek entry of this Confidentiality Order ("Order") pursuant to Federal Rule of

Civil Procedure 26(c)(1):

1.     **Scope.**  All materials produced or adduced in the course of discovery, including

initial disclosures, responses to discovery requests and subpoenas, deposition testimony and

exhibits, and information derived directly therefrom ("Discovery Material," defined herein *infra*

Section 2.c), shall be subject to this Order.  This Order is subject to the Local Rules of this

District, the Federal Rules of Civil Procedure on matters of procedure and calculation of time

periods, the General Order and Guidelines for Cases Before Judge Ketanji Brown Jackson, and

any other orders issued by the Court.  The protections conferred by this Order apply with equal force to those responding to third-party discovery.

    **2.**    **Definitions.**

        a.    **Party.**  Any party to this action, including that party's counsel, consultants, and retained experts.

        b.    **Non-Party.**  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

        c.    **Discovery Material.**  All items or information regardless of the medium or manner generated, stored or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or generated in disclosures, responses to discovery (including responses to third-party subpoenas) or other requests for documentation in this matter.

        d.    **Confidential Information.**  As used in this Order, "Confidential Information" means: (a) information protected from disclosure by statute to the extent such information is not included in the definition of " "Highly Confidential Information" as defined *infra* Section 2.e of this Order; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the Party has maintained as confidential; (d) personal identity information; (e) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (f) personnel or employment records of a person who is not a party to the case.

        e.    **Highly Confidential Information.**   As used in this Order, "Highly Confidential Information" shall mean any medical or psychiatric information concerning any

individual, including information that is defined as Protected Health Information by the Health

Insurance Portability and Accountability Act of 1996 ("HIPAA") and related regulations.

      f.     **Receiving Party.**  A Party or Non-Party that receives Discovery Material

from a Producing Party.

      g.     **Producing Party.**  A Party or Non-Party that produces Discovery

Material in this case.

      h.     **Designating Party.**  A Party or Non-Party that designates information or

items that it produces in disclosures or in responses to discovery or otherwise as "Confidential

Information" or "Highly Confidential Information."

      i.     **Protected Material.**  Any Discovery Material that is designated as

"Confidential Information" or "Highly Confidential Information."

      j.     **Expert.**  A person with specialized knowledge or experience in a matter

pertinent to the litigation who has been retained by a Party or her/its counsel to serve as an expert

witness or as a consultant in this action.  This definition includes a professional jury or trial

consultant or an investigator retained in connection with this litigation.

      k.     **Outside Counsel.**   Attorneys, paralegals, and their staff who are

employed by or members of the law firms currently retained by the Parties to this action and all

independent companies or agencies that are directly engaged by Outside Counsel to perform

litigation support services under the supervision of such counsel whose duties and

responsibilities require access to Protected Material.

      l.     **In-house Counsel.**  Attorneys who are employees of a Party whose duties

and responsibilities require access to Protected Material.

m. **Professional Vendors.**  Persons or entities specifically engaged for the limited purpose of providing electronic data support, providing translation services, processing documents or reviewing documents.

3.    **Designating Protected Material.**

a.    **Exercise of Restraint and Care in Designating Material for Protection.** A Designating Party may designate Protected Material only after review of the document by an attorney who has in good faith determined that the document contains Confidential Information or Highly Confidential Information.[1]  A Designating Party must take care to limit any such designation to the specific material that qualifies under the appropriate standards and must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

b.    **Timing of Designations.**  Except as otherwise provided in this Order, or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly designated before the material is disclosed or produced.

c.    **Designation of Protected Material.**

---

[1]    An attorney who reviews the documents and designates them as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and/or "HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" must be admitted to the Bar of at least one state but need not be admitted to practice in the District of Columbia.

4

1. **Documents**.  Subject to the terms of the separately negotiated protocol for the production of electronically stored information, a Party may designate a document as containing "Confidential Information" for protection under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information.  The marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed.  Applying the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.   Any copies that are made of any documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

Subject to the terms of the separately negotiated protocol for the production of electronically-stored information, a party may designate a document as containing "Highly Confidential Information" for protection under this Order by placing or affixing the words "HIGHLY CONFIDENTIAL  – SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document.  As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Protected Health Information.  The marking "HIGHLY

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed. Applying the marking "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of Highly Confidential Information are not required to be marked.

2.      **Tangible Objects**. Tangible objects may be designated as containing Confidential Information or Highly Confidential Information by affixing to the object or its container an appropriate label or tag bearing the appropriate designation.

3.      **Depositions**. Unless all Parties agree on the record at the time the deposition testimony is taken, all deposition testimony taken in this case shall be treated as Highly Confidential Information for a period of ten (10) days after receipt of the deposition transcript. No later than the tenth day after receipt of the deposition transcript, a Party may serve a Notice of Designation to all Parties of record as to specific portions of the testimony that are designated "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" thereafter those portions identified in the Notice of Designation shall be protected under the terms of this Order. If, at the completion of the tenth day after receipt of the deposition transcript, no Party has served a Notice of Designation, the deposition testimony shall be treated as Confidential Information for a period of twenty (20) days after receipt of the deposition transcript. No later than the thirtieth day after receipt of the deposition transcript, a Party may serve a Notice of

Designation to all Parties of record as to specific portions of the testimony that are designated "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," and thereafter those portions identified in the Notice of Designation shall be protected under the terms of this Order. The failure to serve a timely Notice of Designation shall waive any designation of testimony taken in that deposition as Confidential Information unless (a) the Parties agree to a different time for serving a Notice of Designation or (b) the Party seeking a late designation seeks and obtains relief from the deadline from the Court.

4.      **Permitted Redactions.** The Parties agree to only redact from Discovery Material information that (i) is covered by an appropriate claim of privilege or (ii) is required or permitted to be redacted or withheld pursuant to federal or state statute and regulations, including any names, street addresses, and other identifying information pertaining to individuals or entities whose names and other identifying information are protected from disclosure by HIPAA regulations codified primarily at Sections 18, 26, and 42 of the United States Code, and the Standards for Privacy of Individually Identifiable Health Information, codified at 45 C.F.R. §§ 160 and 164. Redactions for relevancy are not permitted.

5.      **Access to and Use of Protected Material**.

a.      **General Protections**. Protected Material shall not be used or disclosed by the Parties, counsel for the Parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including any appeal thereof.

b.      **Persons to Whom Confidential Information May Be Disclosed.** . The Parties and counsel for the Parties shall not disclose or permit the disclosure of or use of any Confidential Information to any third person or entity except as set forth in subparagraphs (1)-

(10).  Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

      1. **Outside Counsel**;

      2. **Parties**.  Individual Parties and current employees of a Party, including In-House Counsel, but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

      3. **Authors and Recipients**.  The author or recipient of a document containing the Confidential Information;

      4. **The Court and Its Personnel**.  Court staff, as well as the trier of fact;

      5. **Court Reporters and Recorders**.   Court reporters and recorders engaged for depositions;

      6. **Professional Vendors**.  Provided such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound;

      7. **Experts**.  Provided such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound;

      8. **Witnesses at Depositions and Trial**.  During their depositions and at trial, witnesses in this action to whom disclosure is reasonably necessary.  Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses, upon written request, may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts and only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound.  If Confidential Information is provided to a deponent in connection with his or her review of the deposition transcript, notice

8

shall be provided to opposing counsel in advance of the disclosure of such information. Pages of transcribed deposition testimony or exhibits to depositions that are designated as containing Protected Material pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order;

        9. **Insurers.**  Insurance businesses that may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy any judgment in this action, and counsel for such insurance businesses, but only after such persons have completed the certification contained in Attachment A, Acknowledgement and Agreement to Be Bound; and

        10. **Others by Consent.**   Other persons only by written consent of the producing Party or upon order of the Court and on such conditions as may be agreed or ordered, including the completion of the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound.

        c.      **Persons to Whom "Highly Confidential Information" May Be Disclosed.**  The Parties and counsel for the Parties shall not disclose or permit the disclosure or use of any Highly Confidential Information to any third person or entity except as set forth in subparagraphs (1)-(8). Subject to these requirements, the following categories of persons may be allowed to review Highly Confidential Information

        1. **Outside Counsel**;

        2. **In-house Counsel**;

        3. **Authors and Recipients**.  The author or recipient of a document containing the Highly Confidential Information;

        4. **The Court and Its Personnel**.  Court staff, as well as the trier of fact;

5. **Court Reporters and Recorders**.  Court reporters and recorders engaged for depositions;

6. **Professional Vendors**.  Provided such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound;

7. **Experts**.  Provided such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound; and

8. **Others by Consent**.  Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, including the completion of the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound.

d.  **Control of Documents**.  Counsel for the Parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Protected Material.  Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

e.  **Party's Own Use of Protected Materials**.  Nothing in this Order shall be deemed to restrict in any way any producing Party with respect to the use of its own Protected Material.

6.  **Inadvertent Failure to Designate**.  An inadvertent failure to designate a document as containing Confidential Information or Highly Confidential Information does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony, unless otherwise agreed to by the Parties or ordered by the Court.  Upon discovery of the inadvertent failure to designate, a

designating Party must timely advise the Receiving Party of the fact that the information should have been designated and may retroactively designate the material by notice in writing by Bates number or such other means that will allow for the identification of such documents. If a Party designates a document as containing Confidential Information or Highly Confidential Information after it was initially produced, the Receiving Party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order.  No Party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated as containing Confidential Information or Highly Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated as containing Confidential Information or Highly Confidential Information.

Should the Parties disagree as to the appropriate designation of material that was inadvertently not designated, the designating Party's proposed designation shall be maintained until the Parties reach an agreement on the appropriate designation, or until the Court assigns a designation.

7.      **Filing of Confidential Information**.  This Order does not, by itself, authorize the filing of any document under seal.  Any party wishing to file a document designated as Protected Material in connection with a motion, brief or other submission to the Court must, consistent with LCvR 5.1(h), provisionally file the document by electronic means in a manner authorized by the Clerk, accompanied by a motion to seal the document designated as containing Confidential Information or Highly Confidential Information.  The sealing motion must be filed before or simultaneously with the provisional filing of the Confidential Information or Highly Confidential Information and must be noticed for presentment promptly thereafter.  At the

11

hearing on the sealing motion, the Party that designated the document as containing Confidential Information or Protected Health Information shall have the burden of demonstrating the need for sealing.

      **8.**      **Challenging Designations**.  Any Party may challenge the designation of Protected Material, pursuant to the following procedures:

           a.      **Meet and Confer**.  A Party challenging the designation of Confidential Information or Highly Confidential Information must do so in writing and in good faith and must begin the process by conferring directly with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation.  The designating Party must respond to the challenge within ten (10) business days of receiving written notice described above.

           b.      **Judicial Intervention**.  If the dispute cannot be resolved within the ten (10) business days of the written notice described above, a Party  may challenge a confidentiality designation, after conferring in good faith as required by Fed. R. Civ. P. 26(f) and LCvR 7(m), by arranging a joint call with chambers to schedule a telephone conference with the Court pursuant to Guideline 4(b) of the Court's Appendix to General Order and Guidelines for Civil Cases.  With the Court's permission following the telephone conference, the Party challenging the confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge.  Any such motion must be filed in accordance with Paragraph 9 of this Order.  The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Until the Court (or a Magistrate Judge to whom the Court refers the

motion pursuant to Guideline 4(b)) rules on the challenge, all Parties shall continue to treat the materials designated as containing Confidential Information or Highly Confidential Information under the terms of this Order.

9.      **Action by the Court**.  Nothing in this Order or any action or agreement of a Party under this Order shall be construed to limit the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

10.      **Use of Protected Material at Trial**.  Nothing in this Order shall be construed to affect the admissibility of any document, material or information at any trial or hearing.  A Party that intends to present or that anticipates that another Party may present Protected Material, at a hearing or trial shall bring that issue to the Court's and Parties' attention by motion or in a pretrial memorandum without disclosing the Protected Material.  The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.  Nothing in this Order shall be deemed a waiver of any Party's right to use and review its own documents and its own Protected Material at trial or otherwise, in its sole and complete discretion.

11.      **Protected Material Subpoenaed or Ordered Produced in Other Litigation**.

a.      If a Receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information or Highly Confidential Information, the Receiving Party must so notify the Designating Party, in writing, immediately and in no event more than five (5) court days after receiving the subpoena or order.  Such notification must include a copy of the subpoena or court order.

b.      The Receiving Party also must immediately inform in writing the Party who caused the subpoena or order to issue in the other litigation that some or all of the material

covered by the subpoena or order is the subject of this Order.  In addition, the Receiving Party

must deliver a copy of this Order promptly to the party in the other action that caused the

subpoena to issue.

    c.  The purpose of imposing these duties is to alert the interested persons to

the existence of this Order and to afford the Designating Party in this case an opportunity to try to

protect its Confidential Information or Highly Confidential Information in the court from which

the subpoena or order issued.  The Designating Party shall bear the burden and the expense of

seeking protection in that court of its Confidential Information or Highly Confidential

Information and nothing in these provisions should be construed as authorizing or encouraging a

Receiving Party in this action to disobey a lawful directive from another court.  The obligations

set forth in this paragraph remain in effect while the Party has in its possession, custody or

control Confidential Information or Highly Confidential Information by the other party to this

case.

   **12.**  **Challenges by Members of the Public to Sealing Orders**. An interested

member of the public has a right to challenge the sealing of particular documents that have been

filed under seal, and the Party asserting confidentiality will have the burden of demonstrating the

propriety of filing under seal.

   **13.**  **Obligations on Conclusion of Litigation**.

    a.  Unless otherwise agreed or ordered, this Order shall remain in force after

dismissal or entry of final judgment not subject to further appeal.

    b.  Unless otherwise ordered or agreed to in writing by the producing party,

within sixty (60) days after the final termination of this litigation by settlement or exhaustion of

all appeals all parties in receipt of Protected Material shall use reasonable efforts to either return

such materials and copies thereof to the producing party or destroy such Protected Material and certify that fact. The Receiving Party's reasonable efforts shall not require the return or destruction of Protected Material that (i) is stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes, (ii) is located in counsel's email archive system or archived electronic files of departed employees, or in counsel's document management system, or (iii) is subject to legal hold obligations. Backup storage media will not be restored for purposes of returning or certifying destruction of Protected Material, but such retained information shall continue to be treated in accordance with the Order. Counsel for the Parties shall be entitled to retain copies of court papers (and exhibits thereto), correspondence, pleadings, deposition and trial transcripts (and exhibits thereto), expert reports and attorney work product that contain or refer to Protected Material, provided that such counsel and employees of such counsel shall not disclose such Protected Material, except pursuant to court order. Nothing shall be interpreted in a manner that would violate any applicable canons of ethics or codes of professional responsibility.

        c.     **Deletion of Documents Filed under Seal from ECF System**. Filings under seal shall be deleted from the ECF system only upon order of the Court.

      **14.**    **Order Subject to Modification**. Nothing in this Order abridges the right of any Party or Non-Party with standing to seek its modification by the Court in the future. Each Party expressly acknowledges that such modifications may be necessary. Further, each Party expressly acknowledges that written modifications to this Order approved by the Parties and the Court may be necessary as the case goes forward.

      **15.**    **No Prior Judicial Determination**. This Order is entered based on the representations and agreements of the Parties and for the purpose of facilitating discovery.

Nothing herein shall be construed or presented as a judicial determination that any document or material designated as containing Confidential Information or Highly Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

16.     **Effective Without Court Order.**  The Parties agree to be bound by this Order pending the entry of this Order by the Court, and any violation of this Order's terms shall be subject to the same sanctions and penalties as if this Order had been entered by the Court.

17.     **Requirement for a Privilege Log**.  There is no duty to produce privileged documents or information.  For any document the producing Party designates—in whole or part—as subject to a claim of privilege, immunity or work-product protection that is responsive to a valid Document Request the producing Party shall supply a privilege log on before the dates identified in the operative Scheduling Order.  The privilege log shall identify documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other Parties to assess the applicability of the privilege or protection.  No Party need list on a privilege log documents generated after the filing of Plaintiffs' initial complaints, unless such documents fall within the scope of agreed or Court-ordered discovery.

18.     **Challenges to Privilege**.  After the receipt of a privilege log, any Party may dispute a claim of privilege, however, prior to any submission to the Court for an *in camera* review, the Party disputing a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons (including legal support) for its assertion that the documents are not privileged.  Within seven (7) business days of receiving notice of the dispute, the Party seeking to support the claim of privilege shall provide a

written response supporting the claim of privilege (including legal support). The Parties will then meet and confer in good faith as to the claims of privilege. If agreement cannot be met after fifteen (15) days from the written notice described above, any party may thereafter submit the disputed material under seal to the Court for a determination as to privilege in accordance with the local rules of the Court.

19.     **Inadvertent Production of Privileged Documents.** If information that is subject to a claim of attorney-client privilege, attorney work product, or any other applicable privilege or immunity from production is inadvertently disclosed in discovery, such inadvertent production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, attorney work product, or any other applicable privilege or immunity from production.

20.     **Challenges to Inadvertent Production of Privileged Material**. If a Party inadvertently or unintentionally produces any document(s) or information the producing Party determines was entitled to a claim of privilege or immunity from discovery (including but not limited to attorney-client privilege, work product immunity, and immunities created by federal or state statute or regulation), the producing Party shall, within five (5) business days of discovering the inadvertent production, give notice to the Receiving Party in writing of the producing Party's claim of privilege or immunity from discovery. The Receiving Party shall immediately return the original and all copies in its possession of the restricted materials to the producing Party.

Inadvertent or unintentional production may not be deemed a waiver in whole or in part

of the producing Party's claim of privilege or immunity from discovery either as to specific

documents and information disclosed or on the same or related subject matter based on the facts

constituting the inadvertent production.  This provision is, and shall be construed as, an Order

under Rule 502(d) of the Federal Rules of Evidence.  Accordingly, as is explicitly set forth in

Rule 502(d), a Party's production of documents, whether inadvertent or intentional, is not a

waiver of any privilege or protection "in any other federal or state proceeding." Fed. R. Evid.

502(d).  The fact of the inadvertent production itself cannot be the basis for a motion to compel.

In the event the Parties disagree over any claim of privilege or immunity from discovery, the

Receiving Party may move to compel the production following a conference between the Parties.

21.     **Persons Bound**.  This Order shall take effect when entered and shall be binding

upon all counsel of record and their law firms, the Parties, and persons made subject to this Order

by its terms.

22.     **Designations by Non-Parties**.   Non-Parties to the litigation may designate

documents containing Confidential Information or Highly Confidential Information for

protection under this Order.  Such information produced by non-parties in connection with this

litigation is protected by the remedies and relief provided by this Order.  Nothing in these

provisions should be construed as prohibiting a non-party from seeking additional protections.

23.     **Publicly Available Information**.  Nothing in this Order shall preclude the

disclosure by any Party of publicly available documents or information.

24.     **Third-Party Disclosure.** Nothing in this Order shall in any way require any

Receiving Party to indemnify or hold harmless the producing Party for the disclosure of

Confidential Information or Highly Confidential Information, materials or documents by a third-party.

*So Ordered.*

Dated: April 25, 2018

Digitally signed by Robin M. Meriweather
Date: 2018.04.25 18:58:16 -04'00'

ROBIN M. MERIWEATHER
U.S. Magistrate Judge

**ATTACHMENT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN W. ZIMMERMAN and RYAN JAMES HOWARD, | |
| Plaintiffs, | No. 16-cv-00013 (KBJ) |
| v. | |
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., and DEBORAH DAVIES, | |
| Defendants. | |

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Confidentiality Order

dated _____ in the above-captioned action and attached hereto, understands the terms

thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the

United States District Court for the District of Columbia in matters relating to the Confidentiality

Order and understands that the terms of the Confidentiality Order obligate him/her to use

materials designated as Confidential Information or   in accordance with the Order solely for the

purposes of the above-captioned action and to not disclose any such Confidential Information or

information designated   to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in

penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

20

Business Address: _____
Date:             _____
Signature:        _____

# Exhibit 2

Stephen A. Chiari (SBN 221410)
schiari@srclaw.com
Adrianna A. Rubino (SBN 300951)
arubino@srclaw.com
**SACKS, RICKETTS & CASE LLP**
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile:  415-549-0640

*Attorneys for Petitioners*
Al Jazeera America, LLC, Al Jazeera Media
Network, Al Jazeera International (USA) Inc.,
and Deborah Davies

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES<br><br>Petitioners,<br><br>vs.<br><br>MCKESSON CORPORATION<br><br>Respondent. | Case No. _____<br><br>CASE IN OTHER COURT:<br>*Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case No. 16-cv-00013 (KBJ) (RMM) (D.D.C.)<br><br>**AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY FROM MCKESSON CORPORATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: _____<br>Time: _____<br>Judge: _____<br>Courtroom: _____<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

---

PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO COMPEL.................................................. 1

STATEMENT OF ISSUE TO BE DECIDED............................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

    I.     Introduction.............................................................................................. 1

    II.    Jurisdictional Statement ......................................................................... 2

BACKGROUND TO THIS MOTION .................................................................... 2

    III.   The Underlying Actions............................................................................ 2

    IV.   Discovery Has Established Zimmerman and Howard's Close Connections to a PES Network........................................................................................... 3

    V.    The Instant Motion to Compel ................................................................ 6

ARGUMENT ......................................................................................................... 8

    VI.   This Court Should Order McKesson to Produce the Requested Records.............. 8

        A.    Records of Purchases by ███████████, Their Affiliated Entities, and the Player Plaintiffs are Highly Relevant to the Underlying Actions........ 8

        B.    The Requested Production Is Proportional ................................................. 9

CONCLUSION........................................................................................................ 10

PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28 (D.D.C. 2011)....................................................9

*Frazier v. Bed Bath & Beyond, Inc.*, No. 11-mc-80270 RS (NC), 2011 WL 5854601 (N.D. Cal. Nov. 21, 2011)....................................................10

*In re Coan*, No. C 06-80350, 2007 WL 128010 (N.D. Cal. Jan. 12, 2007)................................10

*Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2011 WL 2470493 (N.D. Cal. Jun. 21, 2011)....................................................9

*Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994) ....................................................9

*Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) ....................................................9

*Perry v. Schwarzenegger*, 268 F.R.D. 344 (N.D. Cal. 2010) ....................................................8

**Rules**

FED. R. CIV. P. 26(b)(1) ....................................................8

FED. R. CIV. P. 45 ....................................................1, 8

Local Civil Rule 37 ....................................................1

PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION TO COMPEL

TO RESPONDENT MCKESSON CORPORATION AND ITS ATTORNEYS:

PLEASE TAKE NOTICE that on _____, at _____, or as soon thereafter as counsel may be heard in Courtroom _____ of the above-entitled Court, located at the San Francisco Federal Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies (collectively, the "Al Jazeera Petitioners") will, and hereby do, move to compel production of documents and materials sought in the Al Jazeera Petitioners' August 31, 2018 subpoena.

This Motion is made pursuant to Federal Rule of Civil Procedure 45 and Local Civil Rule 37 and is supported by this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Stephen A. Chiari filed herewith, and such other materials and any argument and evidence that may be allowed by the Court.

## STATEMENT OF ISSUE TO BE DECIDED

1.      Whether Respondent McKesson Corporation should be ordered to produce the records subpoenaed by Petitioners Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies (collectively, the "Al Jazeera Petitioners") respectfully submit this memorandum of law in support of their motion to compel non-party McKesson Corporation ("McKesson") to produce records within ten (10) days of this Court's order. The requested records relate to certain purchases of medical equipment or pharmaceuticals. This evidence is relevant to the Al Jazeera Petitioners' defense in defamation cases brought against them by Ryan Howard and Ryan Zimmerman (the "Player Plaintiffs") who were mentioned in *The Dark Side: Secrets of the Sports Dopers*" (the "Documentary"), a documentary about the use of performance

enhancing substances ("PES") by professional athletes.[1]  To date, McKesson has failed to produce any documents relating to the use of PES in response to the Al Jazeera Petitioner's August 31, 2018 subpoena (the "Subpoena"), which are essential to the Al Jazeera Petitioners' ability to defend against the Player Plaintiffs' allegations.  Although they will continue to work cooperatively with McKesson on compliance with the Subpoena, the Al Jazeera Petitioners were compelled to file this motion in advance of the fact discovery deadline in the Underlying Actions (October 12, 2018).

## II.     JURISDICTIONAL STATEMENT

This Court has jurisdiction over the instant Motion pursuant to Federal Rule of Civil Procedure 45 because the Subpoena at issue seeks documents from non-party McKesson located at One Post Street, San Francisco, California 94104.

## **BACKGROUND TO THIS MOTION**

## III.    THE UNDERLYING ACTIONS

The Underlying Actions were commenced after the December 27, 2015 broadcast of the documentary *"The Dark Side: Secrets of the Sports Dopers"* (the "Documentary"), which the Al Jazeera Petitioners produced.  The Documentary investigated how doctors, trainers, agents and pharmacists take extreme measures and use deception to secretly supply PES to professional athletes.  PES are often illegal and always banned by professional sports organizations, because they confer an unfair advantage to athletes who use them to pad their statistics and prolong their careers, at the expense of others who play by the rules.

The Al Jazeera Petitioners realized that PES suppliers and users would not speak openly with the media.  Therefore, the Documentary followed Liam Collins, an aging British track star who infiltrated a network of PES peddlers by professing to be desperate to qualify for the 2016 Olympics.  Weaving his way through several contacts, Collins was told how suppliers and

---

[1]  *See Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 & 16-cv-00014 (KBJ) (RMM) (D.D.C.) (the "Underlying Actions").  Through minute orders entered under both of the referenced case numbers on November 18, 2016, Zimmerman's action was consolidated with Howard's action.

**PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF**

1 athletes avoid detection with pseudonyms, phony diagnoses, and falsified or destroyed records.

2 Eventually, Collins was introduced to a pharmacist named Charles Sly, whom PES network

3 members described as "a genius at outwitting WADA [The World Anti-Doping Agency]."[2]

4    Using hidden cameras, Collins recorded twenty-seven hours of conversations with Sly.

5 Over that time, Sly provided an extended tutorial about how he secretly supplied PES to

6 prominent professional athletes and taught them how to avoid detection during drug tests.  In one

7 of many noteworthy scenes caught on film, a former catcher for the Chicago Cubs admitted to

8 taking illegal drugs supplied by Sly.[3]  The footage also showed Sly telling Collins about six other

9 professional athletes who used PES—including Zimmerman, a current first baseman for the

10 Washington Nationals, and Howard, a former first baseman for the Philadelphia Phillies.[4]

11    On January 5, 2016, Zimmerman and Howard filed the Underlying Actions seeking

12 millions of dollars in defamation damages from the Al Jazeera Petitioners.[5]

13 **IV. DISCOVERY HAS ESTABLISHED ZIMMERMAN AND HOWARD'S CLOSE CONNECTIONS TO A PES NETWORK**

15    Despite the Player Plaintiffs' public proclamations of innocence, discovery has revealed

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ██████████[6]████████████████████████████████████

---

22 [2] *See* Declaration of Stephen A. Chiari dated October 11, 2018 ("Chiari Decl."), Ex. A,

23 Documentary Tr. 13.

[3] *See id.* at 22-23.

24 [4] *See id.* at 26-27.

25 [5] *See* Zimmerman Orig. Compl. ¶ 61, Case No. 16-cv-00013; Howard Orig. Compl. ¶ 64, Case No. 16-cv-00014.

26 [6] *See* Chiari Decl., Ex. B, at ZIMMERMAN-0005695.  Sly and Riley went into business

27 together after being introduced by a former football player. *See* Chiari Decl., Ex. C, Riley Dep.
Tr. 31:24-32:1, 50:3-19. ████████████████████████████████

28 ████████████  *See* Chiari Decl., Ex. B, at ZIMMERMAN-0005693.

3

**PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF**

████████████████████████████████████████████████ [7] For his part, ████████

2 ███████████████████████████████████████████████████████████████

3 ████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████████████

6 █████████████████████████████████████ [8]

7 ███████████ is a former MLB player who was twice suspended for using banned PES and who

8 attributed at least one of those suspensions to ██████.[9] Undaunted, ████████ ███████████

9 ██████████████████████████████████████████████████████, eight-time

10 Mr. Olympia and admitted steroid user Ronnie Coleman.[10]

11 ██████████████████████:

12 ████████████████████████████        ████████████████████

13 ████████████████████████████████████████████████

14 █████████████████████████████████[11]

[7] *See* Chiari Decl., Ex. D, at ZIMMERMAN-0005369. ██████████████████████████ ██████████████████████████████████████████████████████ Given
the very personal nature of this information, the Al Jazeera Petitioners did not include the
attachment but can supplement the record should the Court deem this information relevant to the
adjudication of the instant Motion. Notably, Zimmerman has improperly designated all of his
connections to Sly and even Sly's identity as "medical treatment" entitled to highly confidential
protection.

[8] *See* Chiari Decl., Ex. E, at HOWARD-0004982. As with Zimmerman, Howard has applied
extensive, and inappropriate, "highly confidential" designations. The Al Jazeera Petitioners have
already filed a motion to de-designate Howard's materials. *See* ECF No. 104, Case No. 16-cv-
00013. Because that motion is pending, the instant papers were filed under seal out of an
abundance of caution.

[9] *See* Chiari Decl., Ex. F, Byrd Dep. Tr. 81:5-82:3.

[10] *See Five Bodybuilders to Admit Taking Steroids*, (Apr. 30, 2015), https://www.discovery.uk.c
om/blog/the-five-most-famous-bodybuilders-to-admit-taking-steroids; *Drugs and the Evolution
of Bodybuilding* (Aug. 8, 2014), https://www.theatlantic.com/health/archive/2014/08/drugs-and-
the-evolution-of-bodybuilding/375100/.

[11] *See* Chiari Decl., Ex. E, at HOWARD-0004810.

**PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM McKESSON CORPORATION AND MPA IN SUPPORT THEREOF**



Discovery has also exposed the Player Plaintiffs' relationships with ████████, an "anti-aging"[14] specialist who was recruited by Sly and ██████ to treat clients at their sports compound.[15] Together, ██████ Sly, and ██████ prepared materials for a business called Elementz Rx,[16] which was designed to expand upon Sly and ██████ preexisting gateway business, Elementz Nutrition, to "get guys into pharmacy stuff."[17] Although ██████ testified that he could not recall meeting Sly more than one time, the evidence shows that their familiarity was more than skin deep:[18]

---

[12] *See id.* at HOWARD-0004993 to HOWARD-0004994, HOWARD-0004996, HOWARD-0004892, HOWARD-0004897, HOWARD-0004914.

[13] *See* Chiari Decl., Ex. G, at HOWARD-0004158.

[14] *See generally Athletes in Doping Documentary Linked to Controversial Anti-Aging Industry,* WASH. POST (Mar. 11, 2016) [hereinafter *Rucker Washington Post Article*], *available at* https://www.washingtonpost.com/sports/when-pro-athletes-go-to-anti-aging-clinics-doping-experts-take-notice/2016/03/10/f90a01c2-e3ef-11e5-b0fd-073d5930a7b7_story.html?noredirect=on&utm_term=.2cbcbb1b6e11 (reporting on Rucker's anti-aging practice and a string of doping scandals that originated from similar clinics). This article quoted one doping expert as saying, "[W]e [should] be suspicious about elite athletes who visit anti-aging clinics . . . there is so much evidence that the people who run these clinics are willing to bend the rules and break the law." *Id.* (internal quotation marks omitted).

[15] *See* Chiari Decl., Ex. H, Rucker Dep. Tr. 10:4-21.

[16] *See* Chiari Decl., Ex. I, at RILEY0000030; RYWAAC-0000008.

[17] Chiari Decl., Ex. J; *see also* Chiari Decl., Ex. C, ██████ Dep. Tr. 31:24-32:1, 50:3-19 (describing how ██████ and Sly met and went into business together) & Ex. K, at KRUMS-0000852 at 55-56, 70-71 (business plan listing ██████ and Sly on management team for Elementz Nutrition). ███████████████████████████████████—at least until it was taken down around the time the Documentary aired.

[18] This public Twitter post—where Rucker celebrated "our very own Dr. Sly!"—was once linked to an Instagram video that showed Rucker getting a needle injection from Sly. *See* Chiari Decl., Ex. L. The underlying video has since been taken down from various social media platforms. *See Rucker Washington Post Article, supra* note 14.

RuckerIntegrative
@RuckerOzone

Follow ⌄

Dr. Rucker getting an ozone shoulder
injection from our very own Dr. Sly! #ozone
#ozoneinjection...
instagram.com/p/fYtuSTIiZR/

4:44 PM · 17 Oct 2013

♡    ↄ

▓▓▓▓▓▓▓▓[19] which were stocked with banned PES, including testosterone.[20]  His former nurse

testified that ▓▓▓▓ would see special patients with no other staff present.[21]  She further testified

that ▓▓▓▓ would not keep records when he provided testosterone, which was made freely

available to trainers at the sports compound where ▓▓▓▓▓▓▓▓▓▓▓▓[22]

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓[23]

## V.    THE INSTANT MOTION TO COMPEL

On June 8, 2018, the Al Jazeera Petitioners deposed ▓▓▓▓▓▓▓▓

▓▓▓▓ and his role as a supplier of PES and related medical supplies. ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, on August 31, 2018, the

---

[19] *See generally* Chiari Decl., Ex. H, Rucker Dep. Tr. 46:17-47:6, 102:2-18. ▓▓▓▓

*Compare, e.g.,*
*Rucker Washington Post Article, supra* note 19 (quoting anonymous source "familiar with
Howard and Zimmerman's defamation lawsuits" who claimed that Rucker only "drew blood"
from Plaintiffs), *with Ryan Zimmerman, et al. v. Al Jazeera America, LLC, et al.,* No. 18-mc-
00130 (KBJ) (RMM) (D.D.C.), ECF No. 13, at 6 (claiming that Rucker "provided Howard with
an ozone injection in both of his knees").
[20] *See* Chiari Decl., Ex. H, ▓▓▓▓ Dep. Tr. 28:13-18, 29:14-22, 33:16-23.
[21] *See, e.g.,* Chiari Decl., Ex. M, Adams Dep. Tr. 37:14- 22.
[22] *See id.,* Adams Dep. Tr. 38:10- 39:17.
[23] *See* Chiari Decl., Ex. H, ▓▓▓▓ Dep. Tr. 66:4-8.
[24] *See* Chiari Decl., Ex. N, ▓▓▓▓ Dep. Tr. 196:19-20.

6

Al Jazeera Petitioners served a subpoena *duces tecum* on McKesson (the "Subpoena").[25]  The

Subpoena sought, *inter alia*, six categories of information, including but not limited to

documents and communications relating to either of the ████████████████████████████

██████[26]

On September 14, 2018, counsel for McKesson responded with boilerplate objections,

and offered to meet and confer regarding the Subpoena.[27]  Counsel for McKesson and counsel

for the Al Jazeera Petitioners thereafter engaged in a productive and cooperative negotiation

regarding the scope of the Subpoena.  On September 19, 2018, after a meet and confer, the

Al Jazeera Petitioners provided additional information requested by McKesson to facilitate

compliance with the Subpoena.[28]  The Al Jazeera Petitioners also—again as requested by

McKesson—shortened the relevant time period for the Subpoena by close to three years.[29]  And

on September 26, 2018, again as requested by McKesson, the Al Jazeera Petitioners provided

additional information to allow McKesson to more easily identify the requested records.[30]

Since September 26, 2018, however, the Al Jazeera Petitioners have received no

substantive communications, much less a production of documents responsive to the Subpoena.

Indeed, it took three emails last week before McKesson's counsel, on October 5, 2018, agreed to

follow up with their client to determine the status of the request.[31]  After the Al Jazeera

Petitioners sent further follow-up emails on October 9, 2018 and October 10, 2018, McKesson's

counsel finally responded on October 10, 2018 that it appeared documents from the relevant time

frame had been purged, but no final confirmation had been obtained.[32]  Given the October 12,

2018 fact discovery deadline in the Underlying Actions (with an exception for issues that are

subject to motion practice), the Al Jazeera Petitioners had no choice but to move to compel the

---

[25] *See generally* Chiari Decl., Ex. O.
[26] *See id.*
[27] *See generally* Chiari Decl., Ex. P.
[28] Chiari Decl., ¶¶ 20-21 & Ex. Q
[29] *Id.*, ¶ 21 & Ex. Q.
[30] *Id.*, ¶ 22 & Ex. Q.
[31] *Id.*, ¶ 23 & Ex. Q.
[32] *Id.*, ¶ 24 & Ex. Q.

7

**PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF**

1  production of the documents requested under the Subpoena.  The Al Jazeera Petitioners will

2  continue to work cooperatively with McKesson in the hopes of obviating the need for a hearing

3  on this Motion.

4                                        **ARGUMENT**

5  **VI.   THIS   COURT   SHOULD   ORDER   MCKESSON   TO   PRODUCE   THE**

6  **       REQUESTED RECORDS**

7        As discussed above, ███████████████████████████████████████

8  ██████████████████████████████████████████████████████████.[33]

9  Requiring production of those records is proportional to the needs of those cases and will not be

10 burdensome, particularly given the Al Jazeera Petitioners' extensive cooperation in narrowing

11 the scope of the Subpoena and providing additional information to facilitate McKesson's search.

12 Production should therefore be ordered by this Court.

13      **A.    Records of Purchases by ███████████ Their Affiliated Entities, and the**

14      **       Player Plaintiffs are Highly Relevant to the Underlying Actions**

15        The Al Jazeera Petitioners are entitled to discovery of all non-privileged information that

16 is relevant to any claim or defense and "proportional to the needs of the case."  FED. R. CIV. P.

17 26(b)(1); *see also* FED. R. CIV. P. 45 advisory committee note (observing "[t]he non-party

18 witness is subject to the same scope of discovery under this rule as that person would be as a

19 party" governed by Rules 34 and 26); *Perry v. Schwarzenegger*, 268 F.R.D. 344, 349 (N.D. Cal.

20 2010) (affirming the broad discovery standard articulated under Rule 26 in motion relating to

21 non-party discovery).  Here, it is beyond cavil that the requested discovery is highly relevant, and

22 so production should be compelled.

23        In the Underlying Actions, the Player Plaintiffs claim that Sly's statements in the

24 Documentary about their PES usage were defamatory.  The Player Plaintiffs cannot prevail on

25 their defamation claims if the Al Jazeera Petitioners are able to demonstrate that the statements

26 in question are true or substantially true.  *See, e.g., Moldea v. New York Times Co.*, 15 F.3d 1137,

27

28 [33] *See* Chiari Decl., Ex. N, Snider Dep. Tr. 196:19-20.

**PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY**
**FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF**

1150 (D.C. Cir. 1994) ("'Substantial truth' is, however, generally regarded as a defense to defamation."); *Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28, 35 (D.D.C. 2011) ("Truth is an absolute defense to [a] defamation claim[] . . . ."). Information about suppliers in the PES network with known connections with the Player Plaintiffs is therefore integral to the defense of the Underlying Actions. The Al Jazeera Petitioners "must be afforded an opportunity to probe the issue of truth during discovery." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 241 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).

As discussed above, non-party discovery confirms that ███████████████████ ███████████████████████████  ██████████████████████████████ ███████████████  Further, ███████████████████████████████ ████████, who—given the size and significance of McKesson in the U.S. market—may also have sourced from McKesson directly. Guided by this information, the Al Jazeera Petitioners limited the Subpoena to documents or communications relating only to purchases by the PES network (which included ████████████) and the ████████████. The clandestine nature of PES suppliers makes taking direct discovery of McKesson all the more important, as neither the suppliers nor the Player Plaintiffs have been, or are motivated to be, forthcoming regarding their supply or use of PES. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2011 WL 2470493, at *4 (N.D. Cal. Jun. 21, 2011) (denying motion for protective order and upholding third party subpoenas that sought documents not in the plaintiff's possession even though it was "likely that some of these documents exist within defendant's files"). The single best source of evidence regarding the substances or devices that have been supplied by McKesson to ████████████ ████████████████████████████, would be McKesson's own records.

**B.      The Requested Production Is Proportional**

The requested production is not only relevant, but it is also proportional to the needs of the Underlying Actions, and is not burdensome. All the Al Jazeera Petitioners ask is that McKesson conduct a reasonable search of its records for purchases made under the DEA-issued numbers assigned to ████████████ and their businesses, or ████████████████████████

**PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF**

1     ▬▬▬ . The Al Jazeera Petitioners have, at McKesson's request, limited the time period of the
2 request, and otherwise made efforts to reduce any possible burden on McKesson by providing
3 information that will allow McKesson to conduct a more targeted search.

4         Moreover, McKesson has not identified any particularized burden that would arise from
5 compliance with the Subpoena. In any event, this Court should reject any superficial arguments
6 that compliance would be burdensome. *See, e.g.*, *In re Coan*, No. C 06-80350, 2007 WL
7 128010, at *5 (N.D. Cal. Jan. 12, 2007) (granting motion to compel compliance with subpoena
8 where third parties "did not identify how each discovery request is overly broad, burdensome, or
9 oppressive" or "state specific facts in support of the objection"); *see also Frazier v. Bed Bath &*
10 *Beyond, Inc.*, No. 11-mc-80270 RS (NC), 2011 WL 5854601, at *1 (N.D. Cal. Nov. 21, 2011)
11 (granting motion to compel where third party "ma[de] a boilerplate 'relevance' objection" to
12 subpoena but failed to "specifically respond[] to Defendants' relevance argument").

13         Because this discovery would be relevant and proportional, and McKesson has made no
14 showing of burden, this Court should grant the motion to compel.

15 **CONCLUSION**

16         For the foregoing reasons, the Al Jazeera Petitioners respectfully request that McKesson
17 be ordered to produce any responsive, non-privileged documents in their possession within ten
18 (10) days of this Court's order.

19                                   Respectfully submitted.

20

21 Dated: October 11, 2018               SACKS, RICKETTS & CASE LLP

22

23                               By: _____

24                               STEPHEN A. CHIARI
                                ADRIANNA A. RUBINO

25                               *Counsel for Petitioners*
                                Al Jazeera America, LLC,

26                               Al Jazeera Media Network, Al Jazeera
                                International (USA), Inc., and Deborah Davies

27

28

PETITIONERS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
FROM MCKESSON CORPORATION AND MPA IN SUPPORT THEREOF